IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JASON BRENT BISHOP, )
    ID # 1557672 )
        Petitioner, )
vs. ) No. 3:15-CV-3443-D-BH
 )
LORIE DAVIS,[1] Director, ) Referred to U.S. Magistrate Judge
Texas Department of Criminal )
Justice, Correctional Institutions Division, )
        Respondent. )

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**I. BACKGROUND**

On November 8, 2007, the State indicted Jason Brent Bishop (Petitioner) for murder in Cause No. 32397. (Doc. 20-4 at 10.)[2] He pleaded not guilty and was tried before a jury in the 40th Judicial District Court of Ellis County, Texas, on January 26-30, 2009.

**A.**     **Trial and Appeal**[3]

Five eyewitnesses called by the State testified that they saw Petitioner shoot Robert Willmon. Three of them testified that Petitioner and Willmon were arguing or yelling. Pedro Gonzales testified that Willmon had nothing in his hand and made no gestures or threats before Petitioner shot

---

[1] Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2] Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[3] The summary of the evidence at trial is taken from the state appellate court's opinion. *See Bishop v. State*, 10-09-00069-CR, 2010 WL 2674655 at *1-2 (Tex. App. – Waco June 30, 2010).

him. Three of the witnesses testified that after Willmon got out of a pickup and fell to the ground, they saw Petitioner shooting him as he lay beside the pickup. Torivio Martinez testified that he saw Petitioner shoot Willmon in the pickup, but he did not see Petitioner walk around the pickup and shoot Willmon again because he ran to get a DPS trooper. Melanie Francis saw Petitioner shoot Willmon three or four times from the passenger side of the pickup and then wander off, but her view of the other side of the pickup was obstructed. A sixth witness, Princess Mills, testified that she heard shots fired and then saw Petitioner throw the handgun in the pickup. She explained that she did not see Petitioner fire any shots because she was fleeing the scene.

According to Petitioner, Willmon drove him from Missouri to Texas so that he could get a copy of his birth certificate. Petitioner was concerned about Willmon's use of methamphetamine during the drive, so he flushed the remaining methamphetamine down a toilet at a rest stop. Willmon became angry when Petitioner told him what he had done. Petitioner believed that Willmon was reaching for a handgun in the seat between them, so he grabbed it first. Willmon grabbed "something with a blade" and lashed at Petitioner, and Petitioner shot him. He shot him a few more times because Willmon kept coming at him and he thought Willmon was trying to get a shotgun from behind the seat. Willmon got out of the pickup and leaned against the side of the truck. Petitioner claimed that he shot Willmon in self-defense. He denied walking around the pickup and shooting Willmon again after Willmon got out.

Many knives were recovered from the pickup, and a shotgun was recovered from behind the seat. The autopsy revealed that Willmon had been consuming methamphetamine, which the medical examiner testified could cause violent behavior. The medical examiner also testified that the trajectory for one of the gunshot wounds could be consistent with Willmon reaching down to get

2

something while sitting in the driver's seat, and another was possibly consistent with him turning around and reaching for something.

The jury rejected Petitioner's claim of self-defense and convicted him of murder. (Doc. 20-5 at 9.) On January 30, 2009, it sentenced him to 99 years' imprisonment. (*Id.*) The judgment was affirmed on appeal on June 30, 2010. *Bishop*, 2010 WL 2674655. Petitioner did not file a petition for discretionary review. (*See* doc. 3 at 3); *see* www.txcourts.gov (search for Petitioner).

## C. State Habeas Proceedings

Petitioner's state habeas application was filed by counsel on April 6, 2015. (Doc. 20-10 at 24.) He claimed that the State withheld material evidence regarding a witness, Bobby Garlin.

Garlin did not testify at trial. On August 2, 2014, he executed an affidavit at habeas counsel's request and stated that he was in the sleeper section of his cab on the night of the offense. (Doc. 20-10 at 67.) He heard gunshots and saw Petitioner standing at the back of a truck. He did not have a gun in his hand. The victim was laying on the ground, and Petitioner was standing over him and yelling, but he did not fire any additional shots. After that night, Garlin was contacted by a woman who identified herself as working for the State of Texas. He told her what he saw and heard on the night of the offense, as set out in the affidavit. He was not contacted again about the matter until someone working for Petitioner contacted him in 2013. (*Id.*)

An affidavit from defense counsel, dated January 27, 2015, stated that he had never heard of Garlin until he saw his 2014 affidavit. (*Id.* at 69.) He believed that Garlin's affidavit was exculpatory and that his testimony that there were no shots fired at the back of the truck would have impeached witnesses who testified that Petitioner shot Willmon again outside the truck. He believed that Garlin's testimony that Petitioner did not shoot Willmon outside of the truck showed that the

3

shooting inside the truck was the result of sudden passion. Although the State requested a subpoena for "Bobby Gaitlin" of Cohutta, Georgia, the list of requested subpoenas was not provided to defense counsel before trial. He was given the State's witness list on the day that trial started. (*Id*. at 69-71.)

The state habeas court entered findings of fact and conclusions of law. (*Id*. at 168.) It found that Phillip Martin, the chief investigator for the District Attorney's Office who submitted an affidavit in the habeas proceedings, was credible. (*Id*. at 149, 168.) It also found that the two investigators who assisted the District Attorney's Office in the preparation of the case for trial were both male, and there were no females who would have contacted witnesses on behalf of the District Attorney's Office. (*Id*. at 149, 168-69.) It would have been more than unusual for someone to have contacted a witness and said they were "working for the State of Texas." (*Id*. at 149, 169.)

"Bobby Garlin, Cohutta, Georgia" was included on the State's list of potential witnesses, and that list was provided to defense counsel before trial. (Doc. 20-9 at 162; doc. 20-10 at 169.) It was filed on February 4, 2009, within one week of the judgment. (Doc. 20-9 at 162.) Garlin had provided a witness statement to law enforcement officers that stated in its entirety:

> I heard 3 or 4 shots. I rised up from my sleeper to see what was going on, l saw a white male walking from the man, whose was lying on the pavement, at this time he was waving his hands in the air and shaking his head he walked around the rear of the truck, then to the sidewalk, shortly the police was on the scene.

(*Id*. at 152, 169.) Garlin's statement indicated that he did not see the shooting. (*Id*. at 169.) The habeas court found that Garlin's statement did not include exculpatory material, and there was no a reasonable probability that the result of the trial would have been different if the statement had been disclosed. (Doc. 20-10 at 170.)

On July 8, 2015, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. (Doc. 20-7); *see Ex parte Bishop*, No. WR-

83,378-01 (Tex. Crim. App. July 8, 2015).

**D.    Substantive Claims**

Petitioner's habeas petition, signed on August 1, 2015, challenges his conviction on the following grounds:

(1) The State withheld material evidence;

(2) The Court of Criminal Appeals erred in denying the state habeas application on the trial court's untimely findings.

(Doc. 3 at 6.) Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent), filed a response on March 24, 2016. (Doc. 21.) Petitioner filed a reply on May 10, 2016. (Doc. 26.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

5

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C.

§ 2254(e)(1).

## III. STATUTE OF LIMITATIONS

Respondent contends that the *Brady* claim is barred by the statute of limitations. One of the major changes made by AEDPA to the way federal courts handle habeas corpus actions is a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1).

The one-year period is calculated from the latest of either:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See id.* § 2244(d)(1)(A)-(D).

**A.     Calculation of One-Year Period**

Petitioner asserts that the limitations period began when Garlin signed the affidavit on August 2, 2014. He claims that after his appeal was affirmed, he obtained the trial transcript from trial counsel. In November 2010, he contacted an attorney who reviewed the transcript but found no habeas grounds to raise. (*See* doc. 26 at 2.) He contacted another attorney in April 2012, but that attorney also found no grounds to raise. (*See id*.) At the time, the focus was on a recusal issue. (*See* doc. 4 at 6.) He eventually contacted another attorney in July 2012, and on February 20, 2013, that

7

attorney was hired to represent him. (*See id*.) He received trial counsel's file in July 2013. (*See id*.) After reviewing the file, in August 2013, he pointed out to counsel that there were two witnesses, including Garlin, who were not present at trial. (*See id*.) On October 28, 2013, an investigator contacted Garlin by phone. He was still living in Georgia, but he moved before an affidavit could be obtained. (*See id*.) Garlin lived at his address in Cohutta, Georgia, from January 1, 2008 to December 5, 2013. (*See id*. at 35.) He was eventually found in another county in Georgia, and the affidavit was obtained.

On the first day of trial, Petitioner's trial counsel had Garlin's name and city of residence and had been informed that he was a potential witness. By the end of trial, it was apparent that Garlin had not been called as a witness. Petitioner had information with which to locate Garlin and determine what he knew about the offense. He did not obtain Garlin's affidavit until August 2, 2014, which was approximately 5½ years after he was convicted and sentenced. He has not shown that he was diligent in obtaining the affidavit, so the date of the affidavit is not the date on which the limitations period began. *See Ros v. Ducart*, No. 1:15-cv-01050, 2016 WL 758710 at *3 (E.D. Cal. Feb. 2, 2016) (petitioner was not diligent and was not entitled to the limitations start date of § 2244(d)(1)(D) where he had information with which to locate a witness in 2006 but did not attempt to locate the witness until 2014).

Petitioner was given notice that Garlin was a potential witness on January 26, 2009, when the State provided defense counsel with a list of potential witnesses. Petitioner actively began searching for Garlin through habeas counsel in August 2013, and located him in October 2013. If he had begun searching for Garlin at the end of January 2009, when the State provided his name and city of residence, and if it took the same amount of time to locate Garlin at that time as it did in

8

2013, Petitioner could have obtained an affidavit before his appeal was decided in June 2010, and before his conviction became final. The factual predicate for Petitioner's *Brady* claim either became known or could have become known prior to the date his judgment became final. The one-year statute of limitations is therefore calculated from the date his conviction became final.

Petitioner did not file a petition for discretionary review with the Court of Criminal Appeals. His state conviction therefore became final for purposes of § 2244(d) by the expiration of the thirty-day period for filing a petition for discretionary review after his conviction was affirmed on direct appeal. *See Roberts v. Cockrell*, 319 F.3d 690, 694 n.24 (5th Cir. 2003) (under Tex. R. App. P. 68.2 a party has thirty days to file a petition for discretionary review). The appellate court opinion was issued on June 30, 2010. The thirtieth day after that was July 30, 2010, and the one-year limitations period ended on July 30, 2011. Petitioner filed this § 2254 petition on October 19, 2015, the date that it was mailed.[2] A literal application of § 2244(d)(1)(A) renders the *Brady* claim in his § 2254 petition untimely.

**B.   Statutory Tolling**

Section 2244 mandates that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending *shall not be counted toward any period of limitation under this subsection*." 28 U.S.C. § 2244(d)(2) (emphasis added).

Here, Petitioner's state habeas application, which was filed by counsel on April 6, 2015, did not toll the limitations period because it had already expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (an application filed in state court after the limitations period has expired does

---

[2] *See Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

not operate to statutorily toll the limitations period).

C. **Equitable Tolling**

AEDPA's one-year statutory deadline is not a jurisdictional bar and can, in appropriate exceptional circumstances, be equitably tolled. *Holland v. Florida*, 560 U.S. 631 (2010); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998); *cf. Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (only "rare and exceptional circumstances" warrant equitable tolling). "The doctrine of equitable tolling preserves a [party's] claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810 (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)). It "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). A habeas petitioner is entitled to equitable tolling only if he shows that: 1) he has been pursuing his rights diligently, and 2) some extraordinary circumstance prevented a timely filing. *Holland*, 560 U.S. at 649, citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). He bears the burden to show entitlement to equitable tolling. *Phillips v. Donnelly*, 223 F.3d 797, 797 (5th Cir. 2000) (per curiam). Courts must examine each case in order to determine if there are sufficient exceptional circumstances that warrant equitable tolling. *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The Fifth Circuit has also stated that when a prisoner contends that his ability to file a federal habeas petition has been affected by a state proceeding, the court should look at the facts to determine whether equitable tolling is warranted. *Coleman*, 184 F.3d at 402.

Here, Petitioner presents no argument or evidence that he was prevented from filing his state writ or his federal petition earlier. He has failed to meet his burden to show that he is entitled to

any equitable tolling of the federal statute of limitations, so his *Brady* claim is untimely.

## IV. *BRADY* CLAIM

Petitioner's *Brady* claim that the State withheld material evidence regarding the witness, Garlin, also lacks merit.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment. "*Brady* claims involve 'the discovery, after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is material within the meaning of *Brady* only when there is a reasonable probability of a different result at trial had the evidence been disclosed. *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

According to his statement, Garlin did not witness the shooting. After he heard shots, he saw Petitioner standing over Willmon. He did not aver that Petitioner did not shoot Willmon outside the truck, so his testimony would not have supported the argument that Petitioner only shot Willmon in the truck due to sudden passion, and that he did not shoot Willmon again outside the truck. His claim that he heard shots and saw a man walking away from another man who was lying on the pavement actually supports the testimony of the State's witnesses. The state court reasonably concluded that the evidence was not exculpatory, and there was no reasonable probability that the result of the trial would have been different if the statement had been disclosed. Petitioner is not

11

entitled to relief on this claim.

## V. STATE HABEAS PROCEEDING

Petitioner contends that the Court of Criminal Appeals erroneously denied the state application based on the findings of the trial court because the trial court's findings were untimely.

Federal habeas relief cannot be had "absent the allegation by a [Petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Courts cannot grant habeas corpus relief to correct alleged errors in state habeas proceedings. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also Morris v. Cain*, 186 F.3d 581, 585 n. 6 (5th Cir. 1999) ("errors in state postconviction proceedings will not, in and of themselves, entitle a Petitioner to federal habeas relief"); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ( "infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court"). Because he complains of an alleged error in the state proceedings, Petitioner has not shown that he is entitled to relief on this claim.

## VI. EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VII. RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 25th day of September, 2017.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE